UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEROME RATLIFF JR., individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CELADON TRUCKING SERVICES, INC., and CELADON GROUP, INC.,<br><br>Defendants. | No. 17 CV 7163<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jerome Ratliff alleges that defendants Celadon Trucking Services, Inc. and Celadon Group, Inc. intentionally and willfully violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. Defendants move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). That motion is granted.

**I.     Legal Standards**

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction, while a motion to dismiss under Rule 12(b)(2) tests whether the court has personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(1)–(2). For both motions, the party asserting jurisdiction bears the burden of establishing that jurisdiction is satisfied. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

Where, as here, a court resolves a Rule 12(b)(2) motion based on the submission of written materials and without holding an evidentiary hearing, the plaintiff need only make out a prima facie case of personal jurisdiction. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423 (7th Cir. 2010); *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Even though courts resolve all factual disputes in the plaintiff's favor, courts accept as true all unrefuted facts in the defendants' declarations or affidavits. *GCIU-Emp'r Ret. Fund*, 565 F.3d at 1020 n.1. Accordingly, when defendants challenge a fact alleged in the plaintiff's complaint with a sworn statement, the plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Id.*

**II.  Background**

Ratliff applied for a job as a truck driver with Celadon by submitting an application in response to a solicitation on Celadon's website.[1] [1] ¶ 22; [19-1] ¶ 3. Celadon obtains a background report from HireRight, LLC for all of its applicants. [1] ¶ 2. The background report includes information such as the applicant's prior employers, trucking accidents, incident history, and the like. *Id.* ¶¶ 2, 19. After Ratliff electronically signed disclosure and release consent forms, [19-1] ¶ 7, a recruiter at Celadon processed Ratliff's application and initiated a request to obtain

---

[1] Celadon Trucking Services is a motor-carrier company that is incorporated in New Jersey and that has its principal place of business in Indianapolis, Indiana. [18-2] ¶ 3. Celadon Group is Celadon Trucking's parent company; it is incorporated in Delaware and it has its principal place of business in Indianapolis, Indiana. *Id.* ¶ 4. Celadon Group does not recruit or hire drivers. *Id.* Defendants deny that Celadon Group, Inc. is a proper defendant to this action. [20] at 5 n.1. Bracketed numbers refer to entries on the district court docket.

2

his background report from HireRight, [18-2] ¶ 16. Celadon received the report the same day that Ratliff submitted his application. [1] ¶ 23. Based on information from the background report, Celadon decided not to hire him. *Id.* ¶¶ 24–25. But, Celadon did not notify him within three days of their decision to not hire him, nor did Celadon comply with any of the other related Fair Credit Reporting Act requirements. *Id.* ¶ 26.

Celadon leased a drop yard in Illinois, which had space for approximately ten trailers; but Celadon did not have any offices or operations in Illinois, nor did it make employment or personnel decisions in Illinois. [18-2] ¶¶ 8–10. In 2016 and 2017, (1) less than 7% of all routes driven by Celadon drivers began or ended in Illinois, *id.* ¶ 11; (2) less than 5% of all miles driven by Celadon drivers were driven in Illinois, *id.* ¶ 12; (3) and less than 10% of Celadon's revenue was generated by customers headquartered in Illinois, *id.* ¶ 13. Ratliff viewed Celadon's solicitation from Illinois, he submitted his application from Illinois, and his application included his Illinois address. [19-1] ¶¶ 3–5. There was no suggestion that Ratliff's Illinois residency was material to Celadon's hiring decision. *See id.* ¶ 6. The Celadon recruiter who processed Ratliff's application was based in Pennsylvania; and Celadon made the decision not to hire Ratliff from Pennsylvania. [18-2] ¶¶ 14–17.

### III. Analysis

Ratliff asserts that defendants willfully violated the FCRA by failing to provide the requisite notifications under 15 U.S.C. § 1681b(b)(3)(B). This failure, Ratliff contends, caused an informational injury, and it violated his right to

3

privacy.[2] Defendants move to dismiss this action for lack of standing and for lack of personal jurisdiction.

To establish standing under Article III of the United States Constitution, a plaintiff must show an "injury in fact" that is "fairly traceable" to the defendant's conduct and that is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). Ratliff bears the burden of establishing each element of standing. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Here, defendants only challenge the injury-in-fact requirement. Ratliff must show that his injury is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S.Ct. at 1548. Merely alleging a statutory violation does not automatically satisfy the concrete injury requirement. *Id.* at 1549. In some circumstances, where there is a risk of real harm, a violation of a statutory procedural right will be enough to confer standing; but, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

Section 1681b(b)(3)(B) provides that when a consumer applies for employment, which prompts a person to procure a consumer report on the

---

[2] Ratliff's complaint also alleges a third type of harm: "unfairly being denied access to employment." [1] ¶ 46. In their motion to dismiss, defendants argued that Ratliff failed to establish standing regarding his allegation that he was denied fair access to employment. [18-1] at 8. Ratliff failed to respond to that argument in his response brief; a plaintiff's failure to respond "permits an inference of acquiescence and 'acquiescence operates as a waiver.'" *See Wojtas v. Capital Guardian Tr., Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (citation omitted). Accordingly, Ratliff has abandoned that theory of injury. In any event, while Ratliff may have been injured by not receiving an employment opportunity, there is no allegation that suggests that the denial of employment was traceable to any FCRA violation, because there is no allegation that the failure to give FCRA notice had anything to do with Celadon's employment decisions.

4

consumer, and in turn, to take an adverse action on the employment action because of the consumer report, then the person must provide the consumer, within three days of the action, with the following information: (1) a statement that the adverse action was taken because of the consumer report; (2) the name and contact information of the consumer reporting agency that generated the report; (3) a disclaimer that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer with an explanation for the adverse action; and (4) the opportunity for the consumer to request a free copy of the report for the purpose of disputing the accuracy or completeness of the information in the report. 15 U.S.C. § 1681b(b)(3)(B).

Yet, as the Supreme Court explained in *Spokeo*, there are many instances where a violation of one of those four procedures would not result in harm. *Spokeo*, 136 S.Ct. at 1550. As an example, the failure to provide the required notice to the consumer might not cause harm if the consumer information is entirely accurate. *Id*. "In addition, not all inaccuracies cause harm or present any material risk of harm." *Id*. This hypothetical helps resolve this case, where Ratliff does not allege that the report defendants used contained harmful inaccuracies that he was unable to correct.

Drawing on *Federal Election Commission v. Akins*, 524 U.S. 11 (1998) and *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440 (1989), Ratliff argues that he need not show further harm beyond defendants failure to provide those required disclosures because that failure caused his informational injury. Although the

5

Supreme Court cited *Akins* and *Public Citizen* as examples of where a violation of a procedural right was sufficient to constitute an injury in fact, *see Spokeo*, 136 S.Ct. at 1549–50, both cases are distinguishable from this one because the plaintiffs in those cases alleged injuries that involved more than the mere denial of access to information in violation of a statutory procedure. In *Akins*, denying voters access to information about the American Israel Public Affairs Committee's membership, contributions, and expenditures constituted an injury in fact because it limited voters' ability to evaluate candidates for public office, which conflicted with the aims of the Federal Election Campaign Act, 52 U.S.C. § 30101(4). Similarly, the denial of access to records concerning potential nominees for federal judgeships constituted an injury in fact in *Public Citizen* because it interfered with plaintiffs' ability to monitor and to participate in the judicial selection process contrary to the goals of the Federal Advisory Committee Act, 5 U.S.C. App. 2 § 1 *et seq*.

Congress designed the procedures in § 1681b(b)(3)(B) and other sections of the FCRA to prevent the dissemination of false consumer information. *See Spokeo*, 136 S.Ct. at 1550. Had Ratliff, for example, alleged that defendants' violation of the FCRA prevented him from correcting misinformation in the report regarding his driving record, which affected defendants' decision not to hire him, then this case would be analogous to *Akins* and *Public Citizen* because it would describe a concrete harm that the statute sought to prevent. Absent those or related allegations, *Akins* and *Public Citizen* do not support Ratliff's assertion of an injury in fact.

But for the procedural violation, Ratliff would not have a claim against defendants. Indeed, it is possible that the information in Ratliff's report that motivated defendants' hiring decision was accurate and that even if defendants had timely notified Ratliff of the report, defendants still would not have hired Ratliff. In that scenario, there would be no injury—abstract or concrete. "Congress' judgment that there should be a legal remedy for the violation of a statute does not mean each statutory violation creates an Article III injury." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016) (citing *Diedrich v. Ocwen Loan Serv., LLC*, 839 F.3d 583, 590–91 (7th Cir. 2016)). Defendants' violation here is divorced from any concrete harm that the FCRA intended to prevent. Ratliff's informational injury allegations do not satisfy Article III's injury-in-fact requirement.[3]

As for Ratliff's invasion of privacy allegations, his theory is that because the FCRA bears a close relationship to the common law tort of invasion of privacy and because the FCRA creates a substantive right to privacy and information, as well as a private cause of action, a violation thereof satisfies Article III. While it is true that Congress enacted the FCRA to "'ensure fair and accurate credit reporting,' and 'protect consumer privacy'" *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (quoting *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007)), Ratliff does not identify any actual harm to his privacy here.

---

[3] Some other courts have held that a violation of a notice requirement is a concrete injury. *See Church v. Accretive Health, Inc.*, 654 Fed. App'x 990 (11th Cir. 2016); *Banks v. Cent. Refrigerated Servs., Inc.*, 2017 WL 1683056 (D. Utah May 2, 2017); *Demmings v. KKW Trucking, Inc.*, 2017 WL 1170856 (D. Or. Mar. 29, 2017); *Thomas v. FTS USA, LLC*, 193 F.Supp.3d 623 (E.D. Va. 2016). But these authorities are not consistent with *Gubala v. Time Warner Cable*, 846 F.3d 909 (7th Cir. 2017), which requires more rigor in assessing the actual harm caused by a statutory violation—whether substantive or procedural.

Section 1681b(b)(3)(B)—the only section of the FCRA that Ratliff alleges defendants violated—does not call to mind any privacy interests. This is not a case where defendants procured the report without Ratliff's permission, for example. Ratliff's invasion of privacy allegations do not satisfy the injury-in-fact requirement.

Ratliff does not have Article III standing to pursue this action. Defendants' motion to dismiss under Rule 12(b)(1) is granted. There is no justiciable case or controversy here, but since the parties have fully briefed the issue of whether the complaint should also be dismissed under Rule 12(b)(2), I address those arguments for the sake of completeness.

When a court has federal-question jurisdiction over a case, it may exercise personal jurisdiction over a defendant if the relevant federal law authorizes service to the defendant, or if state law in the jurisdiction where the court sits authorizes service to the defendant. *See Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Since the FCRA does not authorize nationwide service of process, *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998); *see also Juarez v. Dimon*, 2014 WL 7177544, at *2 (C.D. Ill. 2014) (citing 15 U.S.C. § 1681p), the Illinois long-arm statute governs whether this court has personal jurisdiction over defendants, 735 ILCS § 5/2-209(c). Illinois permits personal jurisdiction so long as it is authorized under the Illinois Constitution or the United States Constitution. *uBID, Inc.*, 623 F.3d at 425 (citing Fed. R. Civ. P. 4(k)(1)(A)). Under the Due Process Clause of the Fourteenth Amendment, this court may exercise personal jurisdiction over defendants if they

maintain certain "minimum contacts" with Illinois. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015).

Personal jurisdiction can be general or specific, *uBID, Inc.*, 623 F.3d at 425; here, Ratliff asserts that defendants are subject to specific personal jurisdiction in this district, [19] at 16. To establish specific jurisdiction Ratliff must establish the following: (1) defendants purposefully availed themselves of the privilege of conducting business in the forum state or purposefully directed their activities at the state; (2) the alleged injury arose from defendants' forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). The third requirement ensures that defendants will not be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted)).

Ratliff argues that defendants "failure to comply with the FCRA's adverse action notice requirement arose out of Celadon's hiring activities, which were directed, in part, at Illinois." [19] at 18. By seeking to employ Illinois residents, Ratliff contends that defendants did intend to avail themselves of the privilege of conducting business in Illinois and that they cannot be surprised that an injury arising from that solicitation would subject them to personal jurisdiction in that state. Ratliff relies on his declaration, *see* [19-1], and two screenshots of Celadon's

9

website, taken on January 8, 2018, *see* [19-2] at 3, 5. In his declaration, Ratliff states that he applied for employment in response to a solicitation on Celadon's website, which he viewed in Illinois; he submitted his application from Illinois; and his application contained his Illinois address. The screenshots showed eight "Jobs & Vacancies" at Celadon in Illinois cities, [19-2] at 3, and a map of Celadon's "Key Markets," which included Illinois, *id.* at 5.

As defendants argue, though, those statements from Ratliff's declaration and the screenshots do not show that defendants recruited drivers from Illinois, specifically. There is no evidence contemporaneous with Ratliff's application that Celadon was soliciting Illinois residents; the screenshots from 2018 (over three years after Ratliff's application) are irrelevant. That Ratliff could access and interact with Celadon's website from Illinois, without more, does not support a finding that Celadon was targeting the forum state. S*ee be2 LLC*, 642 F.3d at 559 ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."). Ratliff did not rebut the statements from the declaration of Celadon's Vice President of Driver Recruiting that show how limited Celadon's contacts were with Illinois during the relevant time period: Celadon did not conduct recruiting activities in Illinois, it did not make employment decisions in Illinois, and it did not have any offices or operations beyond its single drop yard in Illinois. Furthermore, a small percentage of Celadon's routes started, ended, or passed through Illinois; and a

small percentage of Celadon's revenue was generated by customers headquartered in Illinois. It follows, therefore, that defendants did not purposefully direct their hiring activities—the litigation-related activities–at Illinois. *See Felland*, 682 F.3d at 673.

Ratliff also failed to demonstrate that his claim regarding the required FCRA notifications arose from defendants' Illinois-related activities. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) ("Not only did [plaintiff] fail to link the few sales to [defendant's] litigation-specific activity, but even if it did, it is unlikely that those few sales alone, without some evidence linking them to the allegedly tortious activity, would make jurisdiction proper."). The only connection Ratliff has identified between defendants' conduct and Illinois was his location; that is not enough to establish specific jurisdiction. *See Walden v. Fiore*, 134 S.Ct. 1115, 1123 (2014) ("the plaintiff cannot be the only link between the defendant and the forum"). Based on these facts, exercising personal jurisdiction over defendants would not comport with traditional notions of fair play and substantial justice. *Felland*, 682 F.3d at 673. This court does not have personal jurisdiction over defendants. Their motion to dismiss under Rule 12(b)(2) is also granted.

## IV. Conclusion

Defendants' motion to dismiss, [18], is granted. Plaintiff's claim is dismissed without prejudice for lack of jurisdiction. Enter judgment and terminate civil case.[4]

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: April 23, 2018

---

[4] Ordinarily, leave to amend should be given after a first dismissal. But here, there is no reason to think that new allegations will confer standing on Ratliff or personal jurisdiction over defendants. In another similar case, Ratliff's claim was dismissed for lack of standing and Ratliff declined to amend. *Ratliff v. A&R Logistics*, No. 17-cv-2787, Docket Entries 20–21. Amendment would be futile.